IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INSHALLAH BROWN                    *

        Plaintiff          *

        vs.                *    CIVIL ACTION NO. MJG-16-3616

HOUSING AUTHORITY OF               *
BALTIMORE CITY, et al.
                      *

        Defendants

*       *       *       *       *       *       *       *       *

MEMORANDUM & ORDER RE: MOTION TO DISMISS

The Court has before it Defendant Housing Authority of
Baltimore City's Motion to Dismiss Complaint or in the
Alternative for Summary Judgment [ECF No. 19] and the materials
submitted relating thereto.  The Court finds a hearing
unnecessary.

I.   BACKGROUND

At times relevant hereto, Plaintiff Inshallah Brown
("Brown"), an African-American woman, was employed by Defendant
Housing Authority of Baltimore City ("HABC") and received
housing through HABC's Housing Choice Voucher Program.  Brown
had problems with her landlords and problems in the work
environment that eventually resulted in the termination of her
employment and her filing the instant lawsuit.  In this lawsuit,
Brown presents claims in Six Counts, seeking to impose liability
for racial discrimination and retaliation against HABC.

By the instant motion, HABC seeks dismissal of all claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure[1] and/or Rule 12(c), or, in the alternative, for summary judgment pursuant to Rule 56.

The Court finds the summary judgment motion premature and disallows it without prejudice. As discussed herein, the Court grants dismissal of some, but not all, claims asserted in the Complaint.

II.  LEGAL STANDARD

A. Rule 12(b)(6)

A motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citations omitted).

When evaluating a Rule 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the

---

[1]    All "Rule" references herein are to the Federal Rules of Civil Procedure.

2

plaintiff.  However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]."  Id.  A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Twombly, 550 U.S. at 557).  Thus, if "the well-pleaded facts [contained within a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (alteration in original)).


B.  Rule 12(c)

The motion for judgment on the pleadings filed pursuant to Rule 12(c) is, in the instant case, duplicative of the motion to dismiss pursuant to Rule 12(b)(6).  See Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013)("A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6).").

III.  DISCUSSION

A. Factual Allegations[2]

At all times relevant hereto, HABC has been a "public body corporate and politic" that administers the Section 8 Housing Choice Voucher Program ("HCVP") in Baltimore City.  Md. Code Ann., Hous. & Cmty. Dev. § 15-104 (2006).

Brown is an individual who commenced her employment with HABC on February 14, 2006, as a maintenance worker.  Brown was promoted rapidly and, in the year 2011, began working in the Leasing Department of the HCVP until the termination of her employment on April 15, 2015.  Complaint [ECF No. 1] ¶¶[3] 3,4.

1. First EEOC Charge: Race-Based Discrimination

In 2012, Brown received a voucher for subsidized housing through the Section 8 Housing Choice Voucher Program.  ¶ 12. She utilized the voucher and rented an apartment from Defendants

_____

[2]    The "facts" as stated herein are as alleged by Plaintiff and are not necessarily agreed upon by Defendants. The Court will consider the facts as alleged in the Complaint, as well as any incorporated documents or documents referred to in the Complaint and relied upon by Brown in bringing this suit, such as complaints made to the EEOC. Biospherics, Inc. v. Forbes, Inc., 989 F. Supp. 748, 749 (D. Md. 1997), aff'd, 151 F.3d 180 (4th Cir. 1998).  The Court will not consider other evidence of matters outside of the pleadings, nor convert the motion to one for summary judgment under Rule 56.  See A. S. Abell Co. v. Baltimore Typographical Union No. 12, 338 F.2d 190, 193 (4th Cir. 1964).
[3]    References to "¶" herein are to paragraphs of the Complaint [ECF No. 1].

Case 1:16-cv-03616-MJG    Document 29    Filed 07/26/17    Page 5 of 25


Dwayne London and Alicia London ("the Landlords").

In June 2014, Brown filed a complaint against the Landlords with Code Enforcement, Housing, and Community Development and the HCVP, alleging various health and safety violations in her home. Two inspectors investigated Brown's allegations and wrote up violations against the Landlords in June 2014.

Thereafter, and allegedly in retaliation, Landlord Dwayne London sent emails to Brown's managers at HABC falsely alleging that Brown did not pay rent and that she had unauthorized occupants and drug activity in her home. ¶ 19. These false allegations put Brown in danger of losing her job and housing voucher. ¶¶ 20-21.

On July 15, 2014, Brown was asked to meet about these allegations with HABC's then Acting Administrator, Norman Young, and the Associate Deputy Director of the HCVP, Nicholas Calace ("Calace"). In the meeting, Calace questioned Brown about the allegations. Brown denied them and told Calace that she thought that the Landlords had made false accusations against her to retaliate for her housing complaint against them and because Brown is an African-American woman. ¶¶ 33, 36.

Dwayne London gave Calace notice that he wanted to inspect Brown's house on a specific date. Brown did not allow inspection on the date London requested because of her work schedule. As a result of the scheduling conflict, Calace

threatened to withhold Brown's housing voucher and possibly terminate her job if she did not allow London to inspect on the day he wanted.  ¶¶ 29-32.

On September 18, 2014, Brown filed an administrative complaint with the Maryland Commission on Civil Rights ("the First Charge") [ECF No. 19-5 at 6] stating therein that she believed she had been discriminated against on the basis of her race and describing the alleged Landlord violations and her complaint about the way the situation was handled by Calace. She stated "I do not believe that Caucasian employees are treated the same way. I believe that Mr. Calace's actions and statements were designed to harass and intimidate me. I believe that the only reason that I am being treated in this manner is because of my race."  Id. at 6.

Brown has not supplied the document that presented the findings resulting from her First Charge or the date upon which the findings were made.  However, she does not allege that there was any finding of probable cause that the alleged race-based discrimination occurred.

2. Hostile Work Environment and Retaliation Allegations

Brown alleges that in 2014-2015, an assistant manager, Dawnay L. Green-Chrisp ("Green-Chrisp"), and Brown's supervisor, David Harper ("Harper"), repeatedly removed files from her desk

without notice, which made it difficult for her to do her job.
Brown alleges that she "believed that her efforts to do her job
were being sabotaged by management because of her race and
because of retaliation over her filing the EEOC complaint
against Calace."  ¶ 64.  Both Harper and Green-Chrisp are
African Americans.

Christopher Monroe ("Monroe"), a white male, was a program
specialist who worked on the same files as Brown.  Brown alleges
that Monroe often did not process his part of the files on time.
Monroe's untimeliness caused Brown's files to be delinquent.
Brown was disciplined and eventually terminated for not
processing files in a timely manner. ¶ 68.  Monroe was not
disciplined for his lateness and was promoted.  Green-Chrisp
also had delinquent files, but was not disciplined.

Brown alleges that she received a negative performance
evaluation and was placed, without notice to her, under a
Performance Improvement Program ("PIP") by Harper and Calace.[4]
Brown alleges that the HABC management sabotaged her efforts to
comply with the PIP and perform her job duties by giving her
extra work with short deadlines, failing to answer her questions
about the PIP, and not attending progress meetings with her as

---

[4]    Brown alleges that she did not know that she was under a
PIP until her tuition reimbursement was denied in January 2015.

specified under the PIP.

Brown filed a grievance in January 2015 regarding being placed on the PIP, her heavy caseload, and the files being removed from her desk.  A grievance hearing took place on February 24, 2015. ¶ 85.

In March 2015, Brown received a warning for an unprocessed account, which Brown attributes to someone's removing the file from her desk and a computer system malfunction. ¶ 95.

On April 15, 2015, Brown received notice that HABC had terminated her employment. ¶ 102.

Brown filed another grievance against HABC through the Union, AFSCME.  At her grievance hearing, Brown's witnesses were not allowed to testify and the hearing was stopped prematurely because a Human Resources Officer had a meeting and because the Union representative said the grievance would be handled in arbitration. ¶¶ 104-05.  Brown was notified on July 10, 2015, that the HABC Hearing Officer ruled against her grievance and that the Union would not take her case to arbitration. ¶ 106.

On June 1, 2015, Brown filed an EEOC Complaint ("the Second Charge") [ECF No. 19-5 at 16] claiming that HABC had retaliated against her for filing the First Charge.  On August 31, 2016, she received a "right to sue letter" in response.

B. Procedural Posture

Brown filed the Complaint [ECF No. 1] on November 2, 2016, asserting claims in six Counts:

Count I —   Racial discrimination/harassment in violation of 42 U.S.C. § 2000e (Title VII) (against HABC);

Count II —  Racial discrimination in violation of 42 U.S.C. § 1981 (against HABC);

Count III — Retaliation claim under Title VII, § 2003(e) [sic], § 704(a), and under 42 U.S.C. § 1981 (against HABC);

Count IV —  Violations of the Fourteenth Amendment of the United States Constitution and Article 24 of the Maryland Declaration of Rights (against HABC and Mayor and City Council);

Count V —   Tortious Interference With Employment or "Economic Advantage" under Maryland Law (against the Londons only);

Count VI —  Intentional Infliction of Emotional Distress (against all Defendants).

By the Court's Order Approving Notice of Voluntary Dismissal [ECF No. 15], all claims against the Mayor and City Council of Baltimore were dismissed from the suit.

On December 29, 2016, HABC filed the instant Motion to Dismiss or in the Alternative, Motion for Summary Judgment [ECF No. 19] seeking dismissal of all claims against it in the Complaint.

C. Count I (Racial Discrimination, Title VII)

In Count I, Brown asserts a claim under Title VII of the Civil Rights Act of 1964, stating that she was a victim of racial discrimination in employment, alleging disparate treatment and hostile work environment.

Title VII states, in relevant part:

It shall be an unlawful employment practice for an employer—

(1) to discharge * * * or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . .

42 U.S.C. § 2000e-2(a)(1) (2012).

HABC contends that Brown's Title VII claims in Count I must be dismissed because they are untimely and her pleading is inadequate to establish a claim of racial discrimination.


1. Timeliness

An aggrieved individual may bring a civil action under Title VII within ninety days of receipt of a "right to sue" letter from the EEOC. 42 U.S.C. § 2000e-5 (2012); 29 C.F.R. § 1601.28.

Brown filed the First Charge [ECF No. 19-5 at 6] on or about September 18, 2014. Compl. ¶ 35.  Brown contends that she filed the Complaint in the instant case within ninety days of

10

receiving her Dismissal and Notice of Right to Sue, but she does not specify if that relates to the First Charge.  Pl.'s Opp. [ECF No. 22-1] at 5-6.  She also contends that her suit is timely as to the allegations in the First Charge because her Second Charge for retaliation was based on her termination, which was "a continuous violation from Calace's race-based threat of termination" detailed in her First EEOC Charge. Id. at 6.

"The continuing violation theory allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination, i.e., when the incidents make up part of a hostile work environment claim."  Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007).  The continuing violations theory does not apply when a plaintiff alleges discrete violations.  Id.

Here, the actions of Brown's supervisor Calace disclosed in the First Charge stemmed from distinct problems with the Landlords.  In the Second Charge, signed June 1, 2015, Brown referred to "acts of retaliation" for the First Charge, referring generally to a disputed poor performance evaluation, a tuition reimbursement denial, being placed on a PIP, and being discharged on April 15, 2015.  These are discrete violations involving different actors and times, and, as alleged, not part

of a continuing violation of disparate treatment.

However, the record as it now exists does not establish when Plaintiff received Notice from the EEOC regarding the First Charge. Therefore, the Court shall not dismiss Count 1 as time-barred because essential facts underlying the Defendant's time bar contention are not clearly established by the pleadings. See Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993); Redding v. D.C., 828 F. Supp. 2d 272, 279 (D.D.C. 2011)(comparing ninety day bar to statute of limitations and declining to dismiss claim when complaint did not reveal when ninety days commenced).

## 2. Adequacy of Pleading

Brown asserts that she has presented plausible racial discrimination claims in the Complaint because her factual allegations establish disparate treatment and a hostile work environment.

"[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," but the plaintiff's factual allegations must be evaluated under the "ordinary rules for assessing the sufficiency of a complaint" that require a plaintiff to state a plausible claim that rises above the speculative level. See

McCleary-Evans v. Maryland Dep't of Transp., State Highway
Admin., 780 F.3d 582, 584-85 (4th Cir. 2015), cert. denied, 136
S. Ct. 1162 (2016)(quoting Swierkiewicz v. Sorema N.A., 534 U.S.
506, 511, 515 (2002)).

           a.    Disparate Treatment

     To state a race-based discrimination claim a plaintiff must
allege facts to satisfy the cause of action created by the
statute — i.e., that she was terminated and disciplined more
severely than other employees outside the protected class
because of her race.  See McCleary-Evans, 780 F.3d at 585.

     Brown alleges that she was a member of a protected group
and that she suffered adverse employment actions by being placed
on a PIP, being given warnings, and eventually being terminated
because her files were delinquent and she was not managing her
caseload.

     Brown alleges that her co-workers, Monroe, who is white,
and Green-Chrisp, who is African American, "both had accounts
and files that were unprocessed or processed untimely, yet
neither was placed on a PIP, given an unsatisfactory rating, or
terminated; in fact, both were promoted." ¶ 101.

     These conclusory allegations simply do not support an
inference that Brown was put on a PIP, admonished for late
files, and later terminated because of her race.  Essentially,

the Complaint sets forth facts showing that both white and African-American employees were treated differently than Brown, which leads to a reasonable inference that something unique to Brown, outside of her race, contributed to actions taken against her. Compare Brown v. Target Inc., No. 14-CV-0950, 2015 WL 6163609, at *7 (D. Md. Oct. 16, 2015)(holding complaint stated sufficient Title VII claim when an African-American plaintiff identified four younger, less qualified, white women who were promoted over her for no given reason and alleged that there were no black team-leaders in the store); Westmoreland v. Prince George's Cty., Md., No. 09-CV-2453 AW, 2011 WL 3880422, at *6 (D. Md. Aug. 31, 2011)(concluding complaint adequately alleged Title VII sex discrimination claim when plaintiff alleged she was one of only a few African-American women in the Academy, white males were treated differently, and she was replaced with two white males).  Moreover, Brown's allegations that her work was being sabotaged by her supervisors because of her race are conclusory.

The factual allegations in the Complaint do not present a plausible claim of racial discrimination.

Accordingly, Brown has not adequately pleaded a Title VII disparate treatment claim.

b. <u>Hostile Work Environment</u>

To establish a Title VII hostile work environment claim, a plaintiff must allege:[5]

(1) Unwelcome conduct;

(2) Based on her race;

(3) Sufficiently severe or pervasive to alter the conditions of employment and to create an abusive work environment; and

(4) Which is imputable to the employer.

<u>See</u> <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179, 183-84 (4th Cir. 2001).  To avoid dismissal of the  hostile work environment claims, the Complaint must allege facts showing that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [Brown's] employment."  <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993) (internal citations omitted).

The factual allegations Brown provides to support her hostile work environment claim are (1) that she was treated differently than a white co-worker whose files were also delinquent, (2) that Harper and Green-Chrisp, both African

---

[5]    Although Plaintiff is not required to show a prima facie case to survive a motion to dismiss, the elements of a prima facie claim are helpful in analyzing the plausibility of the claim as alleged.

American, repeatedly moved files off her desk and stopped supporting her work efforts in order to sabotage her because of her race, and (3) that on July 15, 2014, Calace threatened to revoke her housing voucher and discipline her at work if she did not allow the Landlords to inspect her home on a particular date.[6]

The Complaint presents insufficient factual allegations to present a plausible inference that the actions of HABC's employees were racially motivated. The Complaint sets forth actions of Brown's co-workers and supervisors, but the alleged actions have no racial component or discriminatory tone that would permit the Court to infer that these actions were done because of Brown's race. In fact, Brown alleges that Green-Chrisp did not follow the procedure for notifying program specialists when she removed files from their desks in general — not just when she removed files from Brown's desk. ¶ 57.

Brown's factual allegations are speculative and conclusory and do not set forth a plausible Title VII claim of hostile work

---

[6]    As for the July 15, 2014 incident, Brown has not alleged that any non-black housing voucher holders were treated differently than she was, or that Calace made any racial comments or threats. Indeed, the Complaint states merely that "Plaintiff believed" that Calace discriminated against her based on her race. ¶ 33. "Only speculation can fill the gaps in her complaint," which is not sufficient under the Iqbal and Twombly. McCleary-Evans, 780 F.3d at 586.

environment.

Accordingly, all claims in Count I shall be dismissed.


D.  Count III (Retaliation, Title VII)

Title VII provides that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge [under Title VII].

42 U.S.C. § 2000e-3(a)(2012).

To establish a retaliation claim, a plaintiff must establish (1) that she engaged in a protected activity; (2) HABC acted adversely against her; and (3) the protected activity was causally connected to the adverse action. See Holland, 487 F.3d at 218.

Brown has alleged that she engaged in a protected activity by filing her First Charge on September 18, 2014.

Brown has alleged that HABC acted adversely against her in retaliation by:

- over-scrutinizing her work,
- placing her on a PIP,
- failing to take into account her FMLA status,[7]
- sabotaging her efforts to do her job satisfactorily,
- treating her differently than non-black employees,
- failing to provide her with due process,
- not allowing her fair grievance hearings, and

---

[7]  Brown alleges that she took FMLA leave in or around March – April 2012.

17

- terminating her from her employment.

¶ 121.  The Court will assume, as contended by Brown, that at least her placement on the PIP,[8] and her termination, are both possibly actionable adverse employment actions.[9]

The Court concludes that, when viewing the Complaint in a light most favorable to Brown, it presents factual allegations adequate to present a plausible claim that these adverse employment actions had a causal relationship to her protected activity.

Brown filed the First Charge on September 18, 2014.  It appears that HABC received Notice of the First Charge on or about December 2, 2014. Notice [ECF No. 19-5] at 3. Brown alleges that she received a negative performance evaluation three weeks later, on December 24, 2014, and was placed under a PIP in December 2014.

Brown received a written warning in March 2015 for an unprocessed account, and only a month later, on April 15, 2015, Brown's employment was terminated.  In her Second Charge, Brown stated that she was the only person to be discharged, rather

---

[8]   See Chowdhury v. Bair, 604 F. Supp. 2d 90, 97 (D.D.C. 2009)(finding that placing plaintiff on a PIP was a materially adverse action to support retaliation claim). But see Givens v. Cingular Wireless, 396 F.3d 998, 998 (8th Cir. 2005)("[P]lacing [plaintiff] on a 'performance improvement plan,' without more, did not constitute an adverse employment action.")

[9]   And these are the only adverse actions Brown advances in her Opposition to the Motion to Dismiss. [ECF No. 22-1] at 8.

than suspended, after a first write up. Second Charge [ECF No. 19-5] at 16.

"[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004), abrogated on other grounds by Foster v. Univ. of Md.-E. Shore, 787 F.3d 243 (4th Cir. 2015).  The temporal proximity between HABC's receiving Notice of the First Charge and Brown's negative evaluation, contrasted with a positive recommendation she had received about a month prior to her filing the First Charge allows a plausible inference of causation.

Therefore, Brown's Title VII retaliation claim (Count III) shall not be dismissed.


E. Section 1981 Claims (Racial Discrimination, Count II, and Retaliation, Count III)

42 U.S.C. § 1981 provides:

(a) All persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

* * *
(c) The rights protected by this section are protected against impairment by nongovernmental discrimination

and impairment under color of State law.

Brown may not plead a § 1981 racial discrimination or retaliation claim against HABC, a state actor.

> To the extent that [racial discrimination] claims [are] pleaded under § 1981, they run afoul of <u>Jett</u> .... [which] held that when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violations of the rights guaranteed in § 1981.' Thus, the § 1983 requirement that plaintiffs show an official policy or custom of discrimination also controls in § 1981 actions against state entities.

<u>Dennis v. Cty. of Fairfax</u>, 55 F.3d 151, 156 (4th Cir. 1995)(quoting <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 733, 735-36 (1989)); <u>see also</u> <u>Toomer-Frazier v. Columbia, City of</u>, No. 16-2096, 2017 WL 1032090, at *1 (4th Cir. Mar. 16, 2017)(confirming that a retaliation claim under § 1981 is not available against a municipality absent an official policy or custom of retaliation).

Brown has not pled the existence of an official policy or custom of discrimination by HABC.

Accordingly, Brown's § 1981 discrimination and retaliation claims in Counts II and III shall be dismissed.[10]

---

[10]    The Court is not, in the instant decision, addressing any issues as to the admissibility of evidence relating to these § 1981 claims in regard to other claims asserted by Brown.

F. Count IV (Constitutional Claims, Fourteenth Amendment and Article 24)

In Count IV, Brown asserts a claim under the Fourteenth Amendment of the United States Constitution and Article 24[11] of the Maryland Declaration of Rights

> for the deprivation of Plaintiff's rights under equal protection of the law and due process of law because her grievance went unaddressed and she was not afforded a fair, adequate hearing despite controlling law requiring remedy.

Compl. [ECF No. 1] at 18.

As a local government agency,[12] HABC may be sued directly for federal constitutional violations through 42 U.S.C § 1983. See Monell v. Dept. of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978). A Monell claim against a local government must be "based on an official policy or custom that causes a violation of the plaintiff's federal rights," not on the wrongdoings of its individual agents. Sager v. Hous. Comm'n of Anne Arundel Cty., 855 F. Supp. 2d 524, 568 n. 56 (D. Md. 2012); see also Walker v. Prince George's Cty., MD, 575 F.3d 426, 431 (4th Cir. 2009).

---

[11]  Article 24 of the Maryland Declaration of Rights provides "[t]hat no man ought to be taken or imprisoned . . . or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."  Md. Const. Decl. of Rts. art. XXIV.
[12]  Maryland housing authorities are not state agencies for purposes of state tort and § 1983 liability. See Sager v. Hous. Comm'n of Anne Arundel Cty., 855 F. Supp. 2d 524, 568 (D. Md. 2012).

Brown did not adequately plead constitutional claims pursuant to § 1983, nor has she alleged that HABC maintained a policy or practice of depriving individuals of their constitutional rights.

Furthermore, Brown fails to allege that she was deprived of a liberty or property interest protected by the Fourteenth Amendment Due Process Clause or Article 24.[13]

> An employee of a state or local government has a protected property interest in continued public employment only if he can show a "legitimate claim of entitlement" to his job under state or local law. A public employee in an at-will position cannot establish such an entitlement, and thus cannot claim any Fourteenth Amendment due process protection. As a general rule, state and local employees are considered at-will under Maryland law.

Luy v. Baltimore Police Dep't, 326 F. Supp. 2d 682, 689-90 (D. Md. 2004), aff'd, 120 F. App'x 465 (4th Cir. 2005) (internal citations omitted).

Therefore, Brown's claims stated in Count IV shall be dismissed.


G. Count V (Tortious Interference, Only Landlords)

In Count V, Brown asserts a state law claim against the Landlords for tortious interference with her employment. This

---

[13]    "Article 24 is Maryland's analogue to the Fourteenth Amendment of the United States Constitution." Okwa v. Harper, 757 A.2d 118, 141 (Md. 2000).

claim is not asserted against HABC and is, therefore, beyond the scope of the instant motion.  The Court shall note, however, that this claim against the Landlords appears to be within the supplemental pendant and ancillary jurisdiction of the Court by virtue of its interrelationship with the federal law claim being asserted against HABC.  See 28 U.S.C. § 1367.

    H. Count VI (State Law Claims, Intentional Infliction of Emotional Distress)

    HABC contends that Brown's claims for intentional inflection of emotional distress ("IIED") and violation of Article 24 of the Maryland Declaration of Rights must be dismissed because Brown did not comply with the Local Government Tort Claim Act's ("LGTCA") notice requirement, which applies to state constitutional and tort law claims. See Rounds v. Maryland-Nat. Capital Park & Planning Comm'n, 109 A.3d 639, 651 (Md. 2015), reconsideration denied (Mar. 27, 2015).

    The LGTCA provides, in relevant part, that:

    (b)(1) [A]n action for unliquidated damages may not be brought against a local government[14] or its employees unless the notice of the claim required by this section is given within 180 days[15] after the injury.

---

[14]    HABC is considered "local government" under the LGTCA. Md. Code Ann., Cts. & Jud. Proc. § 5-301(d)(15).

[15]    The current version of the LGTCA proscribes a one-year window in which to give notice.  This amendment did not take effect until October 1, 2015, after the events in question took place, and the amendment applies prospectively. Local Government Tort Claims Act—Notice Requirements and Limits On Liability, ch.

        (2) The notice shall be in writing and shall state the
        time, place, and cause of the injury.

Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(1) (2013).

        "The notice is a condition precedent to the right to

maintain an action for damages, and compliance with the notice

provision should be alleged in the complaint as a substantive

element of the cause of action."  Lyles v. Montgomery Cty., MD,

162 F. Supp. 2d 402, 404-05 (D. Md. 2001)(internal citations

omitted).

        The Complaint does not allege that Brown provided HABC with

notice, nor does Brown contest dismissal of the state law claims

on this basis.  Brown has not provided good cause for why the

notice requirement should be waived.

        Accordingly, Brown's IIED claim and Article 24 claim

against HABC shall be dismissed.


IV.   CONCLUSION

        For the foregoing reasons:

1.    Defendant HABC's Motion to Dismiss the Complaint or in
      the Alternative for Summary Judgment [ECF No. 19] is
      GRANTED IN PART and DENIED IN PART.

        a. The Court herby dismisses all claims in Counts I,
           II, IV, and VI against HABC.

_____

131, § 2, 2015 Md. Laws (H.B. 113).

      b. There remains pending the retaliation claims
          against HABC in Count III and the claims against
          the Landlords in Count V.

2. By August 9, Plaintiff shall arrange a telephone
   conference with the Court and Defendants' counsel to
   address the scheduling of further proceedings,
   including trial, of the remaining claims.


SO ORDERED, this <u>Wednesday, July 26, 2017</u>.


                                 /s/
                          Marvin J. Garbis
               United States District Judge