```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

INSHALLAH BROWN                   *

             Plaintiff            *

         vs.                      *   CIVIL ACTION NO. MJG-16-3616

HOUSING AUTHORITY OF              *
BALTIMORE CITY, et al.
                                  *
             Defendants
*    *    *    *    *    *    *    *    *
```

            MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Defendant Housing Authority of Baltimore City's Motion for Summary Judgment [ECF No. 47] and the materials submitted relating thereto. The Court finds that a hearing is not necessary.

I.   BACKGROUND

   A. Asserted Claims

Plaintiff Inshallah Brown ("Brown" or "Plaintiff") filed a Complaint [ECF No. 1] asserting federal and state law claims[1] against the Mayor and City Council of Baltimore, the Housing Authority of Baltimore City ("HABC"), and two individual Defendants, Dwayne and Alicia Johnson ("the Landlords").

Claims against Defendants Mayor and City Council of

---

[1] Racial discrimination (Counts I & II), retaliation (Count III), violation of procedural due process rights under the Maryland Constitution (Count IV), tortious interference (Count V), and intentional infliction of emotional distress (Count VI).

Baltimore have been dismissed, see ECF No. 15, and the majority of Plaintiff's claims against HABC were also dismissed in this Court's Memorandum and Order of July 26, 2017. See Memorandum and Order at 24-25, ECF No. 29 (dismissing Counts I, II, IV, and VI).

Accordingly, there are only two remaining claims in this case: retaliation (Count III) asserted against HABC, and tortious interference (Count VI) asserted against the Landlords.

B. Factual Background

Plaintiff was employed by HABC for nine years until she was terminated on April 15, 2015. Brown Aff. ¶¶ 2-3, ECF No. 48-3; Def.'s Mot. Ex. 1A, ECF No. 47-4. At the time of termination, she was working as a "Program Specialist I" in the Housing Choice Voucher Program ("HCVP"). Brown Aff. ¶ 2.

i. Job Performance Prior to 2014

Plaintiff's performance evaluations for years 2006, 2007, 2008, 2009, 2010, 2011, 2012, and 2013 indicated that she "met expectations" for her position. Pl.'s Opp. Ex. 3, ECF No. 48-4.

Starting in April 2014, her supervisor was David Harper

("Harper").[2] Pl.'s Opp. Ex. 10, ECF No. 48-5. On August 8, 2014, Mr. Harper purportedly wrote a letter of recommendation to an unspecified "Hiring Manager" stating his belief that

> [Ms. Brown] has proven to be hard working, reliable and fully committed to exceeding customer expectations. She has a team player mindset, as well as the ability to work with minimal supervision. Ms. Brown has consistently demonstrated all of these qualities and more. I heartily endorse her for any endeavor she pursues and she has my highest recommendation.

Pl.'s Opp. Ex. 1, ECF No. 48-4.

Mr. Harper denies ever having written this letter, although he admits that the signature on the letter "looks like" his signature. Pl.'s Opp. Ex. 8, ECF No. 48-5; Harper Dep. Tr. 115-116, ECF No. 47-8. He expressed concerns about the authenticity of the letter because he cannot recall ever writing a letter for Ms. Brown, because there is no formal heading on the letter, and because he usually writes reference letters that are specific to a position or company, not one that is addressed generally to a "Hiring Manager." Harper Dep. Tr. 116-117, ECF No. 47-8.

---

[2] During the relevant time, Mr. Harper was supervised by Shannon Peterson ("Peterson"), the Administrator of Leasing and Inspections. Alston Aff. ¶ 6, ECF No. 47-3.

3

### ii. Charge of Race Discrimination

On September 18, 2014, Ms. Brown filed a charge of race discrimination with the Maryland Commission on Civil Rights ("MCCR") against HABC. Brown Aff. ¶ 4. The charge related to certain disputes with the Defendant Landlords, Dwayne London and Alicia London, which threatened her employment position at HABC.[3]

On December 2, 2014, she was notified by letter that MCCR had received her charge of discrimination ("MCCR Notice Letter"). Brown Aff. ¶ 5. The MCCR Notice Letter contained a Certificate of Service indicating that it had also been served on HABC on December 2, 2014. Pl.'s Opp. Ex. 2, ECF No. 48-4.

There is little to no evidence in the record indicating when Ms. Brown's supervisors learned of her charge of racial discrimination. The deputy chief for the Housing Choice Voucher Program, Corliss Alston ("Alston"), cannot remember when she

---

[3] In 2012, Ms. Brown received a voucher for subsidized housing through the Section 8 Housing Choice Voucher Program ("HCVP"), the same Program that she works for at HABC. Compl. ¶ 12. Allegedly, the Landlords sent emails to Ms. Brown's managers at HABC falsely alleging that Brown did not pay rent and that she had unauthorized occupants and drug activity in her home. Id. ¶ 19. These allegations put Ms. Brown in danger of losing her job and housing voucher. Id. ¶¶ 20-21.

4

learned of the charge by Ms. Brown.[4]  Ms. Brown admits she does not know when (or if) any of her supervisors actually learned of her charge.  Brown Dep. Tr. 54-57, ECF No. 47-6.

### iii. 2014 Evaluation and Subsequent Termination

Three weeks after the MCCR Notice Letter, on December 24, 2014, Ms. Brown received an unfavorable performance evaluation ("2014 Evaluation").[5]  Brown Aff. ¶ 7.  This was the first evaluation she had received since 2006 indicating a score of "improvement needed."  Pl.'s Opp. Ex. 3, ECF No. 48-4.  The 2014 Evaluation, signed by Ms. Peterson, indicated that Ms. Brown needed to improve in several areas, including file review and completing the quality control checklist, completing tasks in a timely manner and meeting various deadlines, ensuring her work is accurate and supported by tools provided to her, managing files consistently, and communication with colleagues by email.  Pl.'s Opp. Ex. 7, ECF No. 48-5.

She was also placed on a Performance Improvement Plan ("PIP") that day, constituting a disciplinary action.  Brown

---

[4] Alston supervised Mr. Harper and Ms. Peterson.  Alston Aff. ¶ 6.  She oversaw the HCVP staff and had access to the staff files, including evaluations, performance improvement plans, voucher participation, and other records.  Pl.'s Opp. Ex. 4, ECF No. 48-4.  She reports to Nick Calace ("Calace"), the Associate Deputy Director.  Alston Aff. ¶ 4.
[5] For the year starting December 2013 through November 2014.

Aff. ¶ 8; Pl.'s Opp. Ex. 7, ECF No. 48-5. She states she did not know about her placement on a PIP until she was later refused educational assistance by Ms. Alston for having been disciplined.[6] Brown Aff. ¶ 8.

Ms. Brown states her belief that despite having been put on a PIP, her immediate supervisor "sabotaged [her] efforts" to improve her performance, including by meeting with her only one time, requiring her to conduct her own desk reviews, and removing client files from her desk without notifying her. Id. ¶ 12. Other colleagues and supervisors, including Dawnay Green-Chrisp ("Green-Chrisp"),[7] would also remove files from her desk without telling her. Id. ¶ 13. Ms. Brown was assigned a larger work load, was refused assistance when she requested it, was refused answers when she tried to find out where the missing files had gone, and was given inconsistent information about how many files she was responsible for processing. Id. ¶¶ 13-19. On March 16, 2015, Ms. Green-Chrisp wrote a memorandum to staff entitled "NOTES NOTES NOTES," advising that staff had to document "'the system'" with what they were doing with a

---

[6]  But her signature appears on the PIP Plan, dated December 24, 2014, the same day she received her evaluation. Pl.'s Opp. Ex. 7, ECF No. 48-5.

[7]  Although the record is somewhat unclear, Ms. Green-Chrisp appears to be an assistant supervisor for Ms. Brown. Pl.'s Opp. Ex. 11, ECF No. 48-6.

6

client's file. Pl.'s Opp. Ex. 14, ECF No. 48-6. Yet according to Plaintiff, Ms. Green-Chrisp and Mr. Harper failed to follow these instructions themselves. Brown Aff. ¶ 21.

Ms. Brown states her belief that these actions amount to retaliation against her for her racial discrimination charge, but admits that aside from the MCCR Notice Letter, she does not have evidence to support that any of her supervisors actually knew of the charge:

> Q. Okay. So you believe David Harper retaliated against you for your complaint, correct?
> A. I believe that the agency retaliated against me.
> Q. Okay. So you believe somehow the agency gave direction to its staff to retaliate against you?
> A. That is my belief.
> Q. Okay. Who at the agency conveyed that message? Because the agency can't speak. The agency has employees that speak for it. So who at the agency conveyed that message?
> A. My belief is Nicholas Calace.
> Q. Okay. What do you have to show that?
> A. I don't have anything other than my complaint to show that.
> Q. Okay. Do you have anything to show when Nicholas Calace learned that you charged the Housing Authority with discrimination?
> A. I have my original complaint, and I have a copy of the correspondence from the Maryland Commission on Human Relations notifying the Housing Authority.

Brown Dep. Tr. 225-226, ECF No. 47-6.

Mr. Harper denies refusing to help Ms. Brown while she was on the PIP plan. He states that he and Ms. Green-Chrisp "met with her consistently, almost daily, to provide assistance and help to meet her expectations." Pl.'s Opp. Ex. 11, ECF No. 48-6.

The record shows at least one instance in which he did not provide help when Ms. Brown asked for his assistance in "processing [her] accounts." Pl.'s Opp. Ex. 12, ECF No. 48-6. The record also shows that Ms. Brown requested help from him on several occasions, although it is unclear whether Mr. Harper or any other supervisor responded to all these requests.[8] Mr. Harper admits that he was aware that files had been removed from Ms. Brown's desk without her notice. Pl.'s Opp. Ex. 15, ECF No. 48-6. The record indicates he addressed the missing file issue on at least one occasion. Def.'s Mot. Ex. 1A, ECF No. 47-4.

Plaintiff's PIP was "extended" on February 10, 2015, giving her more time to improve her work. Def.'s Mot. Ex. 1A, ECF No. 47-4. However, Defendant contends that her performance continued to be dissatisfactory based on a Performance Improvement Review conducted on March 24, 2015. Alston Aff. ¶ 10, ECF No. 47-3; Def.'s Mot. Ex. 1A, ECF No. 47-4.

---

[8] See, e.g., Pl.'s Opp. Ex. 11, ECF No. 48-6.

Plaintiff was terminated from HABC on April 15, 2015. Defendant contends that Ms. Brown was terminated for her unsatisfactory work. Alston Aff. ¶ 10. As support, Defendant attaches Ms. Brown's 2013 performance review, which indicated that although she "met expectations" that year, her performance suffered from similar deficiencies as the ones discussed in her 2014 Evaluation (e.g., needing improvement on file review, ensuring her work is accurate, needing to meet deadlines, communicating more effectively, and improving management and organization of files). Def.'s Mot. Ex. 1A, ECF No. 47-4.

II.  LEGAL STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement: [t]he Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically. After so doing, the essential question is whether a reasonable fact finder could

return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). Thus, in order to defeat a motion for summary judgment, "the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

When evaluating a motion for summary judgment, the Court must bear in mind that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

III.  RETALIATION

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge [under Title VII]." 42 U.S.C. § 2000e-3(a). To establish a retaliation

10

claim, Brown must establish (1) that she engaged in a protected activity; (2) HABC acted adversely against her; and (3) the protected activity was causally connected to the adverse action. See Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).

It is undisputed that Ms. Brown engaged in a protected activity by filing a charge of racial discrimination, and that she suffered an adverse action (either by being placed on a PIP or by termination of employment). The parties dispute whether the third element of causation has been satisfied.

To prove a causal connection, Plaintiff must be able to show that HABC acted against her "'because the plaintiff engaged in a protected activity.'" Holland, 487 F.3d at 218 (emphasis in original). Therefore, she needs to prove that the actors who engaged in these adverse actions knew of her racial discrimination charge. Id. See also Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."). To survive summary judgment, Plaintiff "must have evidence from which a reasonable factfinder could conclude that

11

a causal connection exists between the protected activity and the adverse action." Dowe, 145 F.3d at 657.

Plaintiff survived the motion to dismiss because the Court found that the short time between the December 2, 2014 MCCR Notice Letter and the December 24, 2014 Evaluation and PIP action was suspicious, especially in light of Plaintiff's prior positive reviews. Memorandum and Order at 19, ECF No. 29. The Court permitted the parties to conduct discovery so that any facts showing causation could be brought to light.

After months of discovery, however, Plaintiff has been unable to present any evidence – yet alone sufficient evidence – to show that any of her immediate or higher supervisors (i.e., Mr. Harper, Ms. Green-Chrisp, Ms. Peterson, Ms. Alston, or Mr. Calace) knew of her racial discrimination charge prior to engaging in the adverse actions.

Her deposition shows that her contentions rest on her own personal belief:

> Q Do you know if Corliss Austin ever learned about it?
> A No.
> Q Do you know if Nicholas Calace ever learned about it?
> Q No.

Brown Dep. at 56, ECF No. 47-6.

> Q When did Ms. Green learn about your complaint of discrimination?

```
        A I don't know.
        . . . .
        Q Oh, how -- do you know if she ever learned
        about it?
        A I don't know.
        Q Okay. So it's your perception she treated
        you differently after you filed a complaint?
        A Yes.
```

Brown Dep. at 61, ECF No. 47-6.

```
        Q Okay. With respect to Shannon Peterson, do
        you know if she ever received, or do you
        know if she ever learned about your
        complaint?
        A I'm not sure.
        Q Okay. Is it your perception she treated
        you differently after you filed a complaint?
        A Yes.
```

Brown Dep. at 63, ECF No. 47-6.

```
        Q And you already said you don't know when
        David Harper learned about your
        discrimination charge, correct?
        A Correct.
        Q And you already said you don't know when
        Shannon Peterson learned about your
        discrimination charge, correct?
        A Correct.
        Q And you already said you don't know when
        Corliss Austin learned about your
        discrimination charge?
        A That's true.
        Q And we established that the signature on
        the 2014 evaluation is not Nick Calace's?
        A Correct.
        . . . .
        Q So it's your opinion and guess that it
        must be connected?
        A Yes.
        Q Okay. But you have nothing to show why
        it's connected, just -- you -- you have
        nothing to show that it's connected?
        A Not at this point.
```

Brown Dep. at 130-32, ECF No. 47-6.

She admits that she has a "belief" that Mr. Calace directed her other supervisors to retaliate against her, but she admits that she does not have anything to show how that occurred except for her "complaint" and the MCCR Notice Letter. Brown Dep. Tr. 225-226, ECF No. 47-6. A complaint is not evidence. Moreover, the MCCR Notice Letter, by itself, is not evidence that any of her supervisors knew of her racial discrimination charge. It simply states:

> CERTIFICATE OF SERVICE
>
> I hereby certify that this Notice of a
> Charge of Discrimination was issued on this
> 2 [sic] day of December, 2014, and was
> served on the Respondent on that date.

MCCR Notice Letter at 2, ECF No. 48-4. At most, it shows that HABC as an agency was put on notice of the charge. However, the adverse actions against Plaintiff were carried out by different supervisors (e.g., Harper and Green-Chrisp for allegedly refusing to help her with her files and daily work; Peterson for signing her 2014 Evaluation and PIP plan). There is no evidence that any of these supervisors were aware of the charge or that there was any reason that they should have been aware of the

charge (for example, through an internal protocol notifying HABC managers of these types of complaints).[9]

Plaintiff asks this Court to find that, based solely on the timing of the MCCR Notice Letter, her 2014 Evaluation, and her prior performance reviews, a jury could make a finding of retaliation. However, without additional evidence, the Court is unable to make the inferential leap that notice served on HABC as an agency somehow proves that each individual within the agency is likewise on notice. To survive summary judgment, Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action." Dowe, 145 F.3d at 657.

Plaintiff argues that there are disputed facts that preclude summary judgment, specifically: (1) when the supervisors carrying out the adverse actions were aware of the charge of discrimination, and (2) that Mr. Harper disputes the authenticity of his recommendation letter.

The first issue is not a genuine dispute of fact due to a total lack of evidence from which a jury could infer knowledge

---

[9] Plaintiff attached portions of Alston's deposition transcript showing that she had access to Ms. Brown's personnel files, but there is no indication that the file contained the charge of discrimination. Pl.'s Opp. Exs 4-6, ECF Nos. 48-4 and 48-5.

by any individual.  There is no evidence linking any specific supervisor with the allegedly retaliatory actions such that a "dispute" of fact could even be raised on this record.

The second issue is indeed a dispute of fact, but it is not material.  Taking the facts in the light most favorable to Plaintiff, even if Mr. Harper had written the positive recommendation letter, there is no indication that his perception of her changed <u>because of</u> the subsequent charge of discrimination filed against HABC.  <u>Holland</u>, 487 F.3d at 218 (To prove a causal connection, Plaintiff must be able to show that HABC acted against her "'<u>because</u> the plaintiff engaged in a protected activity.'") (emphasis in original).

Accordingly, the Court finds no genuine dispute of material fact regarding a lack of causation between the racial discrimination charge and the adverse actions taken against Ms. Brown, and will grant summary judgment for Defendant HABC.[10]

---

[10] Even if the facts could somehow show that Plaintiff's supervisors knew of her racial discrimination complaint prior to the adverse actions, Plaintiff is still unable to carry the "ultimate burden of showing pretext by proving that the filing of the discrimination lawsuit was the 'motivating part' in the decision to terminate [her]." <u>McNairn v. Sullivan</u>, 929 F.2d 974, 980 (4th Cir. 1991).  The record, including a comparison of the grounds for job improvement identified in Brown's 2013 and 2014 evaluations, establishes legitimate nondiscriminatory explanations for the PIP and termination.  Plaintiff is unable to present evidence sufficient to meet her burden to show that the employer's proffered reason is mere pretext.  <u>Id.</u> at 978.

IV.  TORTIOUS INTERFERENCE

Because the Court shall grant summary judgment on the federal claims, Plaintiff's remaining claim against the Landlords is no longer within the supplemental pendant and ancillary jurisdiction of the Court.

Accordingly, the state law tortious interference claim shall also be dismissed.

V.  CONCLUSION

For the foregoing reasons:

1. Defendant Housing Authority of Baltimore City's Motion for Summary Judgment [ECF No. 47] is GRANTED.

2. All claims are dismissed against all Defendants.

3. Judgment shall be entered by separate Order.

SO ORDERED, this Tuesday, May 1, 2018.

/s/
Marvin J. Garbis
United States District Judge